Harper, J.
delivered the opinion of the Court.
*356 No doubt a new trial must be granted on the last ground ta-is én for that purpose. It is said by Blackstone, 3 Com. 377, “ a privy verdict is where the judge hath left or adjourned the court, and the jury being agreed, in order to be delivered from their confinement, obtain leave to give their verdict privily out of court; which verdict is of no force, unless afterwards affirmed by a public verdict given openly in court, wherein the jury may, if they please, vary from their privy verdict: So that the privy verdict is indeed a mere nullity; and yet it is a dangerous practice, allowing- time to tamper with the jury, and therefore very seldom indulged. But the only effectual and legal verdict is the public verdict, in which they openly declare to have found the issue for the plaintiff or for the defendant.” The case of Root v. Sherwood, 6 Johns. 68, seems in point to the present question. Before the jury retired, the parties agreed that the jury might deliver a sealed verdict; yet it was held that when the jury came into court to deliver the sealed verdict, either party might have the jury polled, and any of the jurors might dissent from the verdict to which they had previously agreed. See also the case of Blackley v. Sheldon, 7 Johns. 32, and Saunders v. Freeman, Plowd. 211. The practice of allowing a jury to give a privy verdict, or to seal up their verdict, is considered by our courts to be a dangerous one, and is never allowed without the consent of the parties. If the parties will consent that the verdict may be thus given, they must take the risk of the jury’s being tampered with. It is proper to observe, however, that the conduct of the juror in question, was very exceptionable, and might properly have been treated as a flagrant contempt of the Court.
As to the other point involved in the case, it is decided by the case of Nixon ads. English, 3 M‘C. 549, referred to by the presiding Judge, that the maker of a negotiable note has no right to set-off against the bona fide holder, a demand which he may have against an intermediate holder not the original payee, though it may have been transferred after due. I have again examined the doctrine in that case, and concur in the decision. I have found no English case in which such a set-off has been allowed ; or indeed a set-off- against the original payee. In some of the cases, expressions are used, such as by Buller, J. in Brown v. Davis, 3 T. R. 82, that “ when a note is due, the party receiving- it, takes it on the credit of the person who gives it to him;1’ *357 or by Lord Kenyon in Boehm v. Sterling, 7 T. R. 429, “that the party taking a bill of exchange after it is due, takes it subject to all the equity to which the party from whom be takes it is liablefrom which it was argued, that the defendant in this case, might make any defence which he might have made against Humphries, who transferred to the plaintiif. But the English cases are either where the note was void, as for fraud, or want of consideration as between the original parties, or where it has been paid, or transferred to the holder by one who had no title to it. In all these cases, on ordinary principles of law, no action could be maintained by any one; the note being null or discharged, and not existing as a valid instrument, or the holder having derived his title from one who had none. On commercial principles however, an exception is made in favour of a Iona fide holder, who took a negotiable instrument in the ordinary course of trade. But when the holder took the instrument under circumstances of suspicion, as after it was due, the courts have refused to extend this exception to the case of such an one. But that the maker has a set-off, does not affect the goodness of the note; it is no less a valid and subsisting instrument, and in this case, was transferred to the plaintiff by one who had a perfectly good title to it. I do not mean to be understood to say, that if the maker had actually paid the note to an intermediate holder, by which it was discharged on general principles of law, this would not have been a good defence. My opinion inclines to the contrary, and so it is said in the case of Nixon ads. English. A set-off is in strictness rather a cross action than a defence, and the principles of the English decisions do not apply to such a case.
There are American cases in which such a set-off has been allowed. Lansing v. Gaine, 2 Johns. 300. O’Callahan v. Sawyer, 5 Johns. 118, and Lansing v. Lansing, 8 Johns. 454. These are all cases, however, where the demand claimed to be set-off, was against the original payee ; and the principle is so qualified, that the holder took the note subject to all the equities which existed against the original payee. Such I suppose to be the law of our own State, as established by long practice. It is in conformity too to the act of the Legislature of 1798, making bonds and unnegotiable notes assignable, which allows the obligor or maker, “ the advantage of any discounts or defence which he *358 or she would have been intitled unto, had the action been brought in the name of the obligee or obligees of said bond or bonds, or payee or payees of said note or notes, bill or bills.” 2 Faust, 205. There is an obvious difference between a claim of set-off against the original payee, and an intermediate holder. The maker may have given credit to the payee on the faith of setting-off the demand against the note in his hands; but this can hardly happen with respect to a subsequent holder. If the intermediate holder, against whom the demand exists, be solvent, no injury is done to the maker; he may still recover what is due to him : and it would be a hardship on the holder, who has a good title to a valid and subsisting note, without actual fraud, to turn him round to his recourse against the person who transferred to him. If an insolvent person takes the transfer of a note, being indebted to the maker, and afterwards transfers the note to another, who takes it bona fide, the maker may be said to suffer no injury; he is in no worse situation than if his debtor had never taken the note. If in such case the last holder be guilty of laches in taking the note after due, without inquiry, the maker has been guilty of the laches of not paying it at maturity. A negotiable note may have passed through many hands, not known either to the maker or the last holder, and if the maker, after being sued, should accidentally discover that he had some demand against one of these, it would seem inequitable that the bona fide holder should be thus defeated of his action. We are satisfied with the law as settled by the case of Nixon ads. English.
We concur with the presiding Judge, that if the plaintiff knew that there was a good defence to the note in the hands of Humphries, and took the transfer for the purpose of defeating that defence, compelling Mays to pay his note, when he could recover nothing against his insolvent debtor, this would amount to fraud, and would be a good defence against the note in the hands of the plaintiff. That the note was past due, was one of the circumstances to make out this case. I think too, that if notice to that effect had been given, the plaintiff might have been required to prove a consideration paid by him for the note. These were matters however for the consideration of the jury. They will be again submitted to a jury on the new trial; the motion for which is granted.